IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
|  | ) Case No. 19-30473 |
| 4700 South Ashland, LLC, | ) Chapter 11 |
|  | ) Judge Deborah L. Thorne |
| Debtor/Debtor-in-Possession. | ) |

## RESPONSE TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR RELIEF FROM THE AUTOMATIC STAY

4700 South Ashland, LLC, Debtor/Debtor-in-Possession ("Debtor") herein, by and through its attorneys, in its Response to First Midwest Bank's, as Successor-in-Interest to Bridgeview Bank Group, Motion to Dismiss, or in the Alternative, for Relief From the Automatic Stay; and in support thereof, states as follows:

**Introduction**

On October 25, 2019, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date"). The Debtor has been operating its business and managing its financial affairs as a Debtor-in-Possession. No trustee, examiner or committee of unsecured creditors has been appointed to serve in this reorganization case. The Debtor is the owner of the real property located at 4700 South Ashland, Chicago, Illinois (the "Property"). First Midwest Bank ("First Midwest") is the Debtor's secured creditor. First Midwest filed a secured claim in the amount of $2,900,000. First Midwest filed its Motion to Dismiss, or in the Alternative, for Relief From the Automatic Stay (the "Motion"). In the Motion, First Midwest argues that the case should be dismissed for cause as it was filed in bad faith. In the alternative, First Midwest argues that the automatic stay should be modified to allow it to foreclose on the Property. First Midwest has not met its burden to demonstrate that the case should be dismissed or that the automatic stay

1

should be lifted.  The Motion should be dismissed.

**There is No Cause to Dismiss the Case**

First Midwest seeks to have this Chapter 11 case dismissed based on an alleged bad faith filing.  First Midwest has failed to establish anything that would demonstrate a bad faith filing by the Debtor.  First Midwest relies on *In re Grieshop*, 63 B.R. 657 (N.D.Ind. 1986) to argue that the legitimate ends of the bankruptcy law are frustrated by the Debtor's actions.  This is simply not the case.

First Midwest lists out different factors discussed by the court in *Grieshop* that can be considered when considering a bad faith filing.  A review of those factors demonstrates that this was not a bad faith filing.  The Debtor does have unsecured creditors, including part of First Midwest's claim.  There was no prior bankruptcy filing.  There is no improper conduct alleged pre-petition or post-petition.  No court orders have been evaded.  There is a possibility of reorganization, and, in fact, the Debtor has filed a Plan of Reorganization that would pay the secured claim of First Midwest in full and pay unsecured creditors a dividend.  This would resolve not only First Midwest's claim, but also the claims of other creditors.  The Debtor was in existence for years and not created immediately before filing the petition.  All of these factors discussed in *Grieshop* would serve to defeat the Motion.

Additionally, the *Grieshop* case states that one factor to consider for a bad faith filing is that the case is a single asset real estate case.  Since this was a 1986 case, it was decided prior to the changes in the bankruptcy code that added specific rules regarding single asset real estate cases.  Many prior holdings authorize the filing of single asset real estate cases that are filed to avoid the property being foreclosed upon.  The enactment of §362(d)(3) infers that single asset real estate

cases are not per se impermissible and filed in bad faith. *In re LCGI Fairfield, LLC*, 424 B.R. 846, 852 (Bankr.N.D. Cal. 2010). The enactment of §362(d)(3), which sets prompt deadlines for payments to a secure creditor or a plan to be filed that can be confirmed in a reasonable period of time eliminates the perceived abuse of such filings. *Id.* at 851. This Chapter 11 case is a single asset real estate case, which has many of the hallmarks of single asset real estate cases, including lower amounts of creditors and filing to avoid a foreclosure. The arguments of First Midwest to dismiss the case based on a few of the factors from *Grieshop* which are all the hallmarks of single asset real estate cases ring hollow.

First Midwest has merely listed several factors that are present in nearly all single asset real estate cases, which are specifically permitted under the Bankruptcy Code and are not per se bad faith filings as First Midwest would have this Court rule. They have presented nothing that demonstrates any actions by the Debtor that would actually serve as bad faith. This requires the denial of the Motion.

**There is No Cause to Lift the Automatic Stay**

First Midwest argues that the stay should be lifted since this Chapter 11 case was filed in bad faith and because the Debtor has not made adequate protection payments. As discussed above, First Midwest has failed to demonstrate bad faith. Additionally, the Debtor is not required to make adequate protection payments. The Debtor filed a confirmable Plan of Reorganization (the "Plan") on January 23, 2020, which was within 90 days of the Petition date. Pursuant to §362(d)(3), stay relief would be proper unless the Debtor, within 90 days of the petition date commences monthly payments **or** files a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time. The Debtor has complied with §362(d)(3) and therefore, stay relief is

3

not proper.

The payment to First Midwest under the Plan filed by the Debtor is to be made from the sale of the Property.  First Midwest argues that the Debtor did not present a contract to sell the Property at the time the Plan was filed, therefore the Plan is not feasible.  First Midwest is simply incorrect.  As First Midwest was aware, the Debtor was negotiating a Letter of Intent with the owner of the four floors above the Debtor's Property at the time of the filing of the Plan.  In fact, immediately after the Motion was filed, the Debtor obtained a Letter of Intent from the purchaser and presented it to First Midwest in hopes of resolving the Motion and moving forward with a consensual plan.  The Letter of Intent is for an amount well in excess of the secured claim of First Midwest and after payment of the secured claim of First Midwest in full, provides additional funds for the payment of unsecured claims.  Upon presentation of the Letter of Intent to First Midwest, First Midwest requested certain changes to the Letter of Intent in the hopes of reaching an agreement between the parties.  The Debtor has been working with the prospective purchaser and has received an agreement to revise the Letter of Intent to change the purchase price to provide more funds to the estate and to make the other changes that were requested by First Midwest regarding timing.  The Debtor is currently waiting on the signed revised letter of intent, but it has been delayed, in part due to the difficulty in conducting business due to the current economic situation and shelter in place orders.  The Debtor is prepared to provide the Court with the original letter of intent or a draft of the revised letter of intent for in camera inspection, but the Debtor cannot attach it to this response since the prospective purchaser has not provided the revised signed copy.  Providing a copy that is made a public record could hamper the ability to finalize the letter of intent and a contract.  First Midwest, however, is certainly aware of the earlier Letter of Intent that was provided and is aware that it will pay its secured claim in full.

The Debtor filed its Plan within 90 days of the Petition Date.  The Debtor is now finalizing a letter of intent that will lead to a contract to sell the Property, which will pay the secured creditor in full and provide funds to pay unsecured creditors.  This case has been moving forward toward confirming the Plan since the early stages of the case.  "In the initial stages of a Chapter 11 proceeding, the debtor should be granted significant leeway in attempting to establish that successful reorganization is a reasonable possibility."   *In Re SSK Partners, LLC,* 2012 WL 4929019 at *4 (N.D. Ill. Oct. 12, 2012), citing *In Re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (quoting *In Re Ash Grove Apts of DeKalb Cnty., Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990)).  The Debtor should be allowed to proceed with its Plan and present a signed letter of intent and contract for the sale of the Property.  The Plan is eminently feasible and the Plan should proceed.  By granting the Motion and modifying the stay at this stage of the case would not allow the Debtor any of the leeway that it is entitled to be afforded.  Therefore, the Motion should be denied.

In addition, there is no prejudice to First Midwest by keeping the stay in place.  The Property is being maintained by the Debtor as it moves towards confirmation of its Plan.  First Midwest is not harmed by allowing the plan process to proceed and have its secured claim paid in full, which most likely would not happen if it proceeds with a foreclosure.  Furthermore, any potential harm to First Midwest in allowing the plan process to proceed is greatly outweighed by the harm to the Debtor and all other creditors whose claims will undoubtedly go unpaid in a foreclosure.

**Conclusion**

First Midwest has failed to demonstrate any bad faith on behalf of the Debtor in the filing of this Chapter 11 case. The factors cited by First Midwest weigh in favor of the Debtor. First Midwest argument that the case should be dismissed essentially because it is a single asset real estate case does not comport with the Bankruptcy Code or the current state of the case law on the issue. Therefore the case should not be dismissed. Additionally, no grounds exist for modifying the automatic stay at this time. The Debtor has filed its Plan in accordance with Section §362(d)(3) and is prepared to proceed to confirmation. First Midwest is not entitled to relief under §362 of the Bankruptcy Code. Therefore, the Motion should be denied.

WHEREFORE, 4700 South Ashland LLC, Debtor-Debtor-in-Possession, prays for the entry of an Order denying the Motion to Dismiss, or in the Alternative, for Relief From the Automatic Stay and granting such other relief as may be just and appropriate.

    Respectfully submitted,

    4700 South Ashland, LLC,
    Debtor/Debtor-in-Possession

    By:/s/Jeffrey C. Dan
        One of its attorneys

**Debtor's Counsel**:
Jeffrey C. Dan, Esq. (Atty. No. 06242750)
Goldstein & McClintock LLLP
111 W. Washington, Suite 1221
Chicago, IL 60602
(312) 219-6702